UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JASMINE CROZIER                                                                               PLAINTIFF

vs.                                                                   CIVIL ACTION NO. 3:13-cv-640-DPJ-FKB

VENTURE, INC. d/b/a SAVE-A-LOT, et. al.                                           DEFENDANTS

ORDER

This employment-discrimination case is before the Court on Defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment [90]. Plaintiff responded in opposition [92]. Because both parties relied on record evidence, the Court considers the motion under Rule 56 of the Federal Rules of Civil Procedure. And having done so, it concludes that Defendants' Motion should be granted.

I.      Background

The question is whether res judicata bars Plaintiff Jasmine Crozier from pursuing this case. Crozier worked at two Save-A-Lot grocery stores in Jackson, Mississippi, from October 2011 until July 2013. She alleges that her supervisor, Jeff Stewart, "routinely engaged in unwanted, degrading, sexual misconduct toward [Plaintiff], including offensive remarks, gestures, overt demands for sexual services, and other improper conduct as a condition of her continued employment at Save-A-Lot." *Id.*

In September 2011, the Equal Employment Opportunity Commission sued Venture, Inc., d/b/a Save-A-Lot, on behalf of various female employees who allegedly suffered on-the-job sexual harassment at Stewart's hands. *See EEOC v. Venture, Inc. d/b/a Save-A-Lot*, 3:11-CV-596-WHB-RHW (S.D. Miss. Sept. 24, 2013) (hereinafter *Venture I*). The suit resulted in a

Consent Degree, settling all claims for similarly situated persons who suffered sex-based discrimination and retaliation.  Crozier was specifically listed as a settling class member.

In addition to her claims in *Venture I*, Crozier filed the instant action, which now names Venture, Inc., d/b/a Save-A-Lot; Business Management Services, Inc., d/b/a Save-A-Lot; Jeff Stewart; and Dan Myers.  She included claims for (1) unlawful discrimination in violation of Title VII; (2) unlawful retaliation in violation of Title VII; (3) negligent hiring and/or supervision; (4) defamation; and (5) intentional infliction of emotional distress.

Defendants filed an early motion to dismiss based on res judicata, but the Court denied that motion, without prejudice, to allow Crozier an opportunity to conduct discovery.  When that discovery concluded, Defendants again moved to dismiss or in the alternative for summary judgment.  The Court has subject-matter and personal jurisdiction, the parties have submitted their briefs, and the Court is prepared to rule.

II.     Standard

Federal Rule of Civil Procedure 12(d) grants the district court broad discretion to convert a Rule 12(b)(6) motion to Rule 56 motion.  In this case, both parties rely on the record evidence they developed during discovery.  The Court will therefore apply Rule 56.

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

But factual controversies are to be resolved in favor of the nonmovant, "only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Significant to the present motion, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). The 2010 amendments to Rule 56 make this clear. Pursuant to Rule 56(c)(1), a party asserting that a fact "is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Finally, "[t]he court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) (citations omitted).

III.     Analysis

Defendants invoke res judicata as a bar to all claims against all Defendants.  "Federal law determines the res judicata effect of a prior federal court judgment."  *Russell v. SunAmerica Sec., Inc.*, 962 F.2d 1169, 1172 (5th Cir. 1992) (citations omitted).  And under federal law, the Court looks to four elements:

> Application of res judicata is proper only if the following four requirements are met:  (1) the parties must be identical in the two suits; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same cause of action must be involved in both cases.

*Id.* (citations omitted).[1]

In the present case, there should be no dispute that the second and third elements exist.  The Southern District of Mississippi was a competent jurisdiction to hear the Title VII claims in *Venture I*, and the Consent Decree constitutes a judgment on the merits.  *Id.* at 1173 ("[T]his court has long recognized that a consent judgment is a judgment on the merits . . . .").  The dispute lies primarily with the first element, and to a lesser extent the fourth.  The Court will take the issues in reverse order because the latter provides context for the former.

A.     Whether the Causes of Action are the Same

The Fifth Circuit has adopted a transactional approach to determine whether the causes of action are the same.  *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).  And it applies this test in the employment-discrimination context.  *See Thanedar v. Time Warner, Inc.,* 352 F. App'x 891, 898 (5th Cir. 2009).  "Under the transactional test, a prior judgment's

---

[1]Defendants analyzed the issues under Mississippi law, and Crozier cited no res judicata authority whatsoever.  Nevertheless, the Court can address the arguments without additional briefing because the standards are similar with respect to the disputed issues.

preclusive effect extends to all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions, out of which the original action arose." *Id.* (citation omitted). "What constitutes a 'transaction' or a 'series of transactions' is determined by weighing various factors such as whether the facts are related in time, space, origin, or motivation; whether they form a convenient trial unit; and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 402 (5th Cir. 2009) (citation omitted, punctuation omitted). "The critical issue is whether the two actions are based on the same nucleus of operative facts." *Id.* (internal quotation marks and citations omitted). "The nucleus of operative facts, rather than the type of relief requested, substantive theories advanced, or types of rights asserted, defines the claim." *United States v. Davenport*, 484 F.3d 321, 326 (5th Cir. 2007) (citations omitted).

      Here, the causes of action are the same. The EEOC brought *Venture I* on behalf of a class of female employees who worked, or had worked, at Save-A-Lot. *Venture I* Am. Compl. [8] at 1.[2] The EEOC averred that "since approximately 2005," Save-A-Lot "subjected [the individual plaintiff] and other female employees who worked at Defendant's Mississippi stores to unwelcome, degrading and offensive sexual conduct, often culminating in adverse employment actions, based on their sex (female)." *Id.* ¶ 7. The EEOC specifically identified Defendant Jeff Stewart as an alleged harasser. *Id.* ¶ 8. And it further averred that female employees who complained about Stewart were ignored, *id.* ¶ 8(k), and retaliated against—including termination of employment, *id.* ¶¶ 8(o), 9.

---

    [2] The docket number cited corresponds to the docket number in *Venture I*, 3:11cv596 WHB-RHW.

On August 28, 2013, Crozier moved to intervene in *Venture I*. She based her motion on an affidavit, in which she swore that while she was employed at Save-A-Lot through July 2013, Defendant Stewart harassed and retaliated against her, Defendant Meyers ignored her complaints, and she was constructively discharged. *Venture I* Crozier Aff. [122-1]. Her motion was denied, but only because it was untimely. About two months later, *Venture I* ended in a Consent Decree stating that the "Commission brought this action on behalf of . . . Jasmine Crozier . . ." and other class members who worked at Defendants' "Mississippi stores." *Venture I* Consent Decree [129] at 1, 2. The Consent Decree "fully and finally resolve[d] all claims which were raised by the EEOC in its Complaints." *Id*. ¶ 2

During her deposition in this case, Crozier agreed that the Amended Complaint in *Venture I* described the harassment she endured. Crozier Dep. [90-1] at 40, 43–44, 46–49, 52, 56, 58–59. She also agreed that the specific allegations in the present complaint were of the same kind and character addressed in the EEOC's *Venture I* Complaint and the Consent Decree. *Id*. at 65–68.

It is readily apparent that the conduct leading to the Consent Decree is the same conduct that forms the basis of the present case. Because the causes of action are the same, the fourth element is established. *See, e.g.*, *Russell*, 962 F.2d at 1173 (holding that "[t]he fourth element is satisfied because this action and the 1988 action involved essentially the same allegations regarding the same underlying tortious acts . . .").

B.   Whether the Parties are Identical

This element is the true sticking point. In *Venture I*, the EEOC sued Venture, Inc., d/b/a Save-A-Lot. In the present case, Crozier likewise sues Venture, but also sues Stewart, Myers,

6

and Business Management Services, Inc., d/b/a Save-A-Lot, the company that became Crozier's employer for the last few months of her disputed employment. Because Business Management Services and the individual defendants were not parties in *Venture I*, Crozier argues that her claims are not barred. *See* Pl.'s Mem. [93] at 7.

Starting with low-hanging fruit, Crozier was a party to *Venture I* and Crozier was listed by name as a class member. *See Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266–67 (5th Cir. 1990) (noting that "federal courts have consistently held that a non-party is bound if . . . he was represented as a member of a class . . . in the original litigation"). Venture is obviously entitled to dismissal. The more difficult questions relate to the two individual defendants—Stewart and Myers—and Business Management Services. For the reasons that follow, the Court concludes that these defendants were in privity with Venture.

Although the Fifth Circuit has long required "identical" parties in the two suits, it has consistently noted that "[t]o satisfy the identity element, strict identity of parties is not necessary." *Russell*, 962 F.2d 1169, 1173. As such, "[a] non-party defendant can assert res judicata so long as it is in 'privity' with the named defendant." *Id*. (citations omitted). "'Privity' is recognized as a broad concept, which requires us to look to the surrounding circumstances to determine whether claim preclusion is justified." *Id*. (citations omitted). "'Privity' . . . is merely a word to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata." *Bruszewski v. United States*, 181 F.2d 419, 423 (3rd Cir.) (Goodrich, J., concurring), *cert. denied*, 340 U.S. (1950), *cited with approval in Russell*, 962 F.2d at 1173–74.

Looking first to the two individual defendants, the EEOC premised liability in *Venture I* on Stewart's and Myers's alleged acts. The Fifth Circuit has consistently found privity in such circumstances. *See Russell*, 962 F.2d at 1174 (collecting cases and adopting analysis that finds privity between principal and agent); *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1289 (5th Cir. 1989) ("[T]he vicarious liability relationship between Exxon and its employees Evans and Lower, which forms the only asserted basis for Exxon's liability for the computer dispute, justifies claim preclusion."); *Boone v. Kurtz*, 617 F.2d 435, 436 (5th Cir. 1980) (finding privity between officer and governmental agency); *see also Lariscey v. Smith*, Nos. 94–50399, 94–50402, 94–50567, and 94–50763, 66 F.3d 323, 1995 WL 535012, at *2 (5th Cir. Aug. 18, 1995) (finding employees in sufficient privity with employer); *Burleson v. Hancock Cnty. Bd. of Sup'rs*, No. 103CV211, 2006 WL 3751172, at *3 (S.D. Miss. Dec. 15, 2006) ("[A]s agents and employees of Hancock County the vicarious liability relationship between these parties is sufficient to satisfy the requirement for identity of parties to the cause of action.").

This rule would seem especially true for claims brought under Title VII based on the acts of supervisors or even officers or owners. *See Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999) (holding that "a Title VII suit against an employee is actually a suit against the corporation"); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 789 (1998) (observing that an owner, officer, or supervisor "may be treated as the organization's proxy").[3] Stewart and Meyers were in privity with Venture.

---

[3] It is worth noting that the Title VII claims against these individuals would likely fail because individuals are not typically Title VII employers.

That leaves Business Management Services, which apparently employed Crozier from October 2012 through the end of her employment in July 2013.  In *Meza v. General Battery Corp.*, the Fifth Circuit noted that privity may exist "where the non-party's interests were adequately represented by a party to the original suit." 908 F.2d 1262, 1266 (5th Cir. 1990).  The same court applied that rule in its unpublished opinion in *Clifton v. Warnaco, Inc.*, Nos. 94-10226, 94-10657, 53 F.3d 1280, 1995 WL 295863 (5th Cir. Apr. 18, 1995).  There, a former employee, Clifton, sued Warnaco, Inc., but added a claim against a company named Olga in a subsequent suit.  The court noted that Olga was an unincorporated division of Warnaco, which was alone sufficient to find privity.  1995 WL 295863, at *7.  But the court went on to observe, "[i]n any event, Clifton has treated Olga and Warnaco as closely related entities.  In *Clifton I*, he alleged that his employer was Warnaco; in *Clifton II*, Olga." *Id*.  On these facts, the court found that Warnaco adequately represented Olga in *Clifton I*. *Id*.

The same is true here.  When Crozier attempted to intervene in *Venture I*, she signed an affidavit swearing that Venture was her employer when all of the disputed conduct occurred. *Venture I* Crozier Aff. [122-1] ¶¶ 2–4.  She made no reference to Business Management Services in that affidavit.  In this case, Crozier initially repeated her claim that she worked for Venture at all relevant times.  *See* Pl.'s Compl. [1-1] at ¶ 10.  But after discovery, she amended her Complaint and now contends that while she worked for Venture when Stewart's harassment began, she became an employee of Business Management Services in October 2012 when she relocated from the Ellis Avenue Save-A-Lot to the Save-A-Lot located at the Jackson Medical

9

Mall.  *See* Pl.'s Mem. [93] at 7.  Venture owned both groceries.[4]

Crozier's confusion regarding the identity of her employer is understandable and demonstrates the close relationship between the two companies.  Stewart began his career with Venture managing employees in various Save-A-Lot stores.  Stewart Dep. [93-1] at 24, 26.  As his responsibilities grew, he took on more accounting duties and eventually formed Business Management Services to handle the work.  *Id.* at 23, 27.  That company worked closely with Venture on a handshake basis, working out of Venture's office space at its Jackson Medical Mall Save-A-Lot.  *Id.* at 42.

Though Crozier apparently became an employee of Business Management Services when she moved to the Jackson Medical Mall, she obviously believed that Venture remained her employer after that move.  As Crozier has repeatedly described it, she was simply "reassigned." *Venture I* Crozier Aff.[122-1] ¶ 4; Am. Compl. [86] ¶ 13.  Once she moved to the Jackson Medical Mall location, Crozier continued to work under Stewart, continued to handle Save-A-Lot business, and continued to work at a Venture-owned Save-A-Lot location.  Stewart Dep. at 41–42.  Crozier does not appear to have learned the identity of her employer until after discovery in this case.

Her EEOC complaint buttresses this finding.  That charge includes conduct occurring at the Jackson Medical Mall, *i.e.*, after she began working for Business Management Services.  Yet when asked to identify her employer, Crozier named Save-A-Lot.  Pl.'s Compl. [1-1], Ex. "A."  Her response necessarily referenced Venture because it—and not Business Management

---

[4]Even assuming there is no privity between these companies, Crozier's Amended Complaint asserts harassment occurring while she was employed by Venture, and any such claims are barred.

Services—owned the Jackson Medical Mall Save-A-Lot. Indeed the EEOC communicated directly with Venture regarding this claim, mailing a copy of the right-to-sue notice to Dan Myers as "CEO SAVE-A-LOT d/b/a VENTURE." *Id.*[5]

The Court concludes that Venture adequately represented Business Management Services' interests in *Venture I*. Crozier's claims regarding events after she moved to Business Management Services have already been adjudicated in *Venture I*. And because Venture and Business Management Services were sufficiently close to create privity, res judicata applies. *See also Judy Chou Chiung-Yu Wang v. Prudential Ins. Co. of Am.*, 439 F. App'x 359, 361 (5th Cir. 2011) (finding res judicata and holding that plaintiff's former employer adequately represented related entities in initial suit) (citing *Eubanks v. Fed. Deposit Ins. Corp.*, 977 F.2d 166, 170 (5th Cir. 1992) ("A non-party. . . is adequately represented where a party in the prior suit is so closely aligned to her interests as to be her virtual representative.")).

Having found that the four elements are satisfied, the Court must next determine whether Crozier's state-law causes of action—which were not pursued in *Venture I*—are likewise barred. "Claim preclusion, or res judicata, bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999).

The Amended Complaint in the present case raises state-law claims that were not pursued in *Venture I*, but they could have been. As noted, the Court denied Crozier's attempt to intervene

---

[5]Filing an EEOC charge against Save-A-Lot (*i.e.*, Venture) adds weight to the privity finding, but if Venture and Business Management Services were not in privity, then it is questionable whether Crozier exhausted any Title VII claims she arguably had against Business Management Services.

in *Venture I* because it was too late. *Venture I*, Sept. 24, 2013 Order [127]. She could have pursued these claims at an earlier time, and the facts supporting the claims in the present case are essentially identical to the facts Crozier presented in her *Venture I* affidavit. The only possible exception is the defamation claim, but that claim likewise relates to Stewart's and Myers's alleged misconduct in connection with Crozier's employment disputes. Pl.'s Am. Compl. [86] ¶ 41. The claim could have been included in *Venture I*. *See, e.g.*, *Sapp v. Mem'l Hermann Healthcare Sys.*, 406 F. App'x 866, 871 (5th Cir. 2010) (holding that res judicata barred second suit because employment-discrimination claim and copyright-infringement-type claims arose from "single nucleus of operative fact").[6]

IV.     Conclusion

The Court has considered all of the parties' arguments. Those not addressed would not alter the result. And for the reasons stated, Defendants' motion is hereby GRANTED. A separate Rule 58 judgment will be entered.

**SO ORDERED AND ADJUDGED** this the 4th day of November, 2014.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

---

[6] The state-law-claims highlight another way Venture and Business Management Services are in privity. Given the work Crozier performed, the location, and her belief that she was a Save-A-Lot employee, there would at least be a question whether she was a borrowed servant with a claim for injuries Stewart and Myers caused while she worked at the Jackson Medical Mall Save-A-Lot. *See generally Jones v. James Reeves Contractors, Inc.*, 701 So. 2d 774, 777, 735 (Miss. 1997).